Filed 12/26/23 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RYAN BERRY-VIERWINDEN,<br><br>    Defendant and Appellant. | D081861<br><br>(Super. Ct. No. RIF121073)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br><br>NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on December 6, 2023 be modified as follows:

On page 20, new footnote 8 is inserted at the bottom of the page and reads as follows:

> In a petition for rehearing, Berry-Vierwinden argues that our holding conflicts with the Supreme Court's decisions in *Strong* and *Curiel*. We disagree. In both of those cases, the petitioner's jury was instructed on a theory of murder liability that was legally valid at the time of trial but was subsequently narrowed or eliminated by Senate Bill No. 1437. In *Strong*, the theory was felony murder, which "Senate Bill 1437 significantly limited" by making it inapplicable to defendants who were neither the actual killer nor acted with intent to kill—unless they were a " 'major participant' " in the underlying felony and acted with " 'reckless indifference to human life.' " (*Strong*,

*supra*, 13 Cal.5th at pp. 707, 708 [citing §189, subd. (e)(3)].)
As the Supreme Court noted, "[o]nly after the Legislature
amended section 189 would the defendant have had an
argument for ineligibility for murder." (*Id*. at pp. 711–712.)
In *Curiel*, the theory was "aiding and abetting based on the
doctrine of natural and probable consequences" (*Curiel*,
*supra*, 2023 Cal. LEXIS 6622, at *16), which was also a
valid theory of murder liability until it was eliminated by
Senate Bill No. 1437. (*Gentile, supra,* 10 Cal.5th at
pp. 842–851.) By contrast, Berry-Vierwinden does not
dispute that at the time of his trial in 2010, California law
already did not allow a direct aider and abettor to be
convicted of a lying-in-wait murder on an imputed malice
theory.

There is no change in the judgment.

The petition for rehearing is denied.

McCONNELL, P. J.

Copies to: All parties

2

**CERTIFIED FOR PUBLICATION**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| THE PEOPLE, | D081861 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. RIF121073) |
| RYAN BERRY-VIERWINDEN, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Riverside County, John D. Molloy, Judge. Affirmed.

Eric R. Larson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Junichi P. Semitsu, Alan Amann and Eric A. Swenson, Deputy Attorneys General, for Plaintiff and Respondent.

Ryan Berry-Vierwinden appeals from an order denying his petition for resentencing on a 2010 first degree murder conviction under Penal Code

section 1172.6.[1]  Relying on the holding of *People v. Maldonado* (2023) 87 Cal.App.5th 1257 (*Maldonado*), he argues that he is eligible for relief because the instructions given at trial permitted the jury to convict him of first degree, lying-in-wait murder by imputing malice to him "based solely on [his] participation in a crime."  (§ 1172.6, subd. (a).)  Under our more recent decisions in *People v. Burns* (2023) 95 Cal.App.5th 862 (*Burns*) and *People v. Flores* (2023) 96 Cal.App.5th 1164 (*Flores*), we conclude that the trial court correctly denied relief at the prima facie stage because Berry-Vierwinden's claim of instructional error fails to establish that he "could not presently be convicted of murder or attempted murder *because of changes* to Section 188 or 189 made effective January 1, 2019" by Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437).  (§ 1172.6, subd. (a)(3), italics added.)  Accordingly, we affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND[2]

*The Killing*

In early December 2004, the victim Krishana F. was staying at a Comfort Inn hotel with several friends and acquaintances, including Berry-

---

[1]  Penal Code section 1172.6 was originally enacted as Penal Code section 1170.95, but then renumbered as section 1172.6 on June 30, 2022.  (See Stats. 2022, ch. 58, § 10 (Assem. Bill No. 200).)  We refer to the subject statute by its current number throughout this opinion.  All further statutory references are to the Penal Code.

[2]  We previously granted appellant's unopposed request for judicial notice of the appellate record from his direct appeal.  (*People v. Berry-Vierwinden* (Nov. 27, 2012, D059670) [nonpub. opn.])  On our own motion, we also take judicial notice of the opinion from the direct appeal.  (Evid. Code, §§ 452, 459.)  We take our factual summary of the trial evidence from our prior opinion on direct appeal, but we have independently confirmed that it is an accurate summary of the record.

2

Vierwinden and Benjamin Medina. Medina was a gang member who was known to carry a gun. Krishana asked Medina for permission to use a stolen Lincoln Navigator in the group's possession, but Medina refused. Krishana decided to use the vehicle anyway.

Medina was upset with Krishana and felt she had been "disrespectful." He told Berry-Vierwinden that he wanted to "just do her or blast her," which meant to kill her. Medina and Berry-Vierwinden agreed that when Krishana returned to the hotel, Berry-Vierwinden would go to her room to retrieve the Navigator keys. Berry-Vierwinden was friends with Krishana, and they believed she would hand over the keys more easily to him. Their plan was for Berry-Vierwinden to "chirp" Medina on a two-way radio to come to Krishana's hotel room after he retrieved the keys. Berry-Vierwinden later told the police that he expected Medina to "tune her up or hit her or something" and he "brushed" off Medina's earlier statement that he wanted to kill Krishana as "small talk."

Around 3:00 a.m. on December 3, Krishana returned to the hotel in the stolen vehicle and went to her room. Berry-Vierwinden went to Krishana's room and retrieved the Navigator keys from a nightstand. Medina then received a "chirp" and joined Berry-Vierwinden in Krishana's room. After arguing with Krishana, Medina hit her on the head with a handgun, causing her to fall onto the bed. Medina then sat on her stomach and strangled her for about three minutes until she was dead. At Medina's direction, Berry-Vierwinden placed Krishana's body into some garbage bags, then they disposed of her body in an orange grove. Several days later, Medina and Berry-Vierwinden returned to the orange grove and burned Krishana's body. On December 14, a worker found Krishana's burned body in the orange grove.

*Trial and Conviction*

Berry-Vierwinden was charged with murder on the theory that he aided and abetted Medina in the killing, and that the murder was first degree because it was committed by means of lying in wait. (§§ 187, 189.) He was tried separately from Medina. At his trial, the prosecution's theory was that he and Medina formulated and put into action a plan to murder Krishana by means of lying in wait. The defense theory was that the only plan was for Berry-Vierwinden to retrieve the Navigator keys from Krishana, and that Medina on his own decided to kill Krishana.

The trial court instructed the jury with CALCRIM Nos. 400 and 401 on direct aiding and abetting liability, but did not give CALCRIM Nos. 402 or 403 on the natural and probable consequences theory of aiding and abetting.[3] CALCRIM No. 400 stated:

> "A person may be guilty of a crime in two ways. One, he may have directly committed the crime. I will call that person the perpetrator. Two, he may have aided and abetted a perpetrator, who directly committed the crime. A person is equally guilty of the crime whether he committed it personally or aided and abetted the perpetrator who committed it.
>
> "Under some specific circumstances, if the evidence establishes aiding and abetting of one crime, a person may also be found guilty of other crimes that occurred during the commission of the first crime."

---

[3]   California law recognizes two forms of liability for aiders and abettors: (1) directly aiding and abetting the perpetrator's commission of a target offense; or (2) the natural and probable consequences doctrine, which imposes liability on a defendant for a nontarget offense committed by an accomplice as a natural and probable consequence of the target offense the defendant directly aided and abetted. (*People v. Gentile* (2020) 10 Cal.5th 830, 843–844 (*Gentile*).) Senate Bill No. 1437 eliminated the latter theory of liability for murder, but not the former. (*Gentile,* at pp. 846–848.)

CALCRIM No. 401 stated in relevant part:

> "To prove that the defendant is guilty of a crime based on aiding and abetting that crime, the People must prove that:
>
> "1. The perpetrator committed the crime;
>
> "2. The defendant knew that the perpetrator intended to commit the crime;
>
> "3. Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime;
>
> "AND
>
> "4. The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime.
>
> "Someone aids and abets a crime if he knows of the perpetrator's unlawful purpose and he specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime."

The court also gave a modified version of CALCRIM No. 520 on murder with malice aforethought. The modifications revised the opening paragraph to refer to aiding and abetting liability and substituted generic language referring to "a person" or "the person who killed" in place of "the defendant" in subsequent paragraphs. As so modified, the instruction stated in relevant part:

> "The defendant is charged in Count 1 with murder in violation of Penal Code section 187.
>
> "To prove that the defendant is guilty of this crime, the People must prove that he aided and abetted:

"1. A person who committed an act that caused the death of another person;

"AND

"2. When that person acted, he had a state of mind called malice aforethought.

"There are two kinds of malice aforethought, express malice and implied malice. Proof of either is sufficient to establish the state of mind required for murder.

"The person who killed acted with express malice if he unlawfully intended to kill.

"The person who killed acted with implied malice if:

"1. He intentionally committed an act;

"2. The natural and probable consequences of the act were dangerous to human life.

"3. At the time he acted, he knew his act was dangerous to human life;

"AND

"4. He deliberately acted with conscious disregard for human life."

The court further instructed the jury with a modified version of CALCRIM No. 521 on first degree murder by lying in wait. The court did not instruct on any other theory of first degree murder. The modifications to CALCRIM No. 521 similarly revised the instruction to refer to aiding and abetting liability and substituted "a person" for "the defendant." As modified, the instruction stated in relevant part:

6

"If you decide that the defendant has committed murder, you must decide whether it is murder of the first or second degree.

"The defendant is guilty of first degree murder if the People proved that the defendant aided and abetted the murder of Krishana [F.] while lying in wait or immediately thereafter. A murder is committed by lying in wait if:

"1. A person concealed his purpose from the person killed;

"2. A person waited and watched for an opportunity to act;

"AND

"3. Then, from a position of advantage, a person who killed intended to and did make a surprise attack on the person killed.

"[¶] . . . [¶]

"All other murders are of the second degree."

The jury convicted Berry-Vierwinden of first degree murder. The court sentenced him to 25 years to life in prison.

*Direct Appeal*

We affirmed the judgment on direct appeal. (*People v. Berry-Vierwinden, supra*, D059670.) We agreed with Berry-Vierwinden that the trial court should not have given the "equally guilty" language of CALCRIM No. 400 or the last sentence of this instruction stating that "[u]nder some specific circumstances," an aider and abetter of one crime "may also be found guilty of other crimes that occurred during the commission of

7

the first crime."[4]  However, we concluded that when considered as a whole, the instructions correctly informed the jury that to convict Berry-Vierwinden of first degree murder, it had to find he knew about and intended to assist Medina's intent to commit a murder by lying in wait.  (*Id*. at **6–10.)  We also found that the trial court's modifications of CALCRIM Nos. 520 and 521 did not "allow[] the jury to find [Berry-Vierwinden] guilty based on Medina's state of mind and/or conduct rather than his own" because "the jury was properly instructed in a manner that told them that defendant was guilty of murder committed by Medina only if defendant knew about, wanted to assist, and did assist Medina's murderous conduct."  (*Id*. at *10.)

*Section 1172.6 Petition and Ruling*

In December 2022, Berry-Vierwinden filed a pro per petition for resentencing under section 1172.6, alleging that he was eligible for relief under amendments to the law made by Senate Bill No. 775 (2021-2022 Reg. Sess.).  Specifically, he asserted that "[a]lthough [he] was not tried under felony murder or the natural and probable consequences doctrine, he was

---

4    This "equally guilty" language has since been eliminated from CALCRIM No. 400.  The last bracketed sentence of CALCRIM No. 400 is designed to be given only when the court also gives CALCRIM No. 402 or 403 on the natural and probable consequences doctrine.  (See *People v. Estrada* (2022) 77 Cal.App.5th 941, 945–949 [section 1172.6 petitioner ineligible for relief as a matter of law even though trial court gave last sentence of CALCRIM No. 400 at trial because court did not give CALCRIM No. 402 or 403 and the instructions taken as a whole did not permit conviction on natural and probable consequences theory].)

convicted under a theory of aiding and abetting, and malice was imputed based solely on his participation in a crime."[5]

On February 24, 2023, the trial court relieved the public defender and appointed counsel for Berry-Vierwinden. At a hearing held the same day, counsel on both sides agreed that the trial judge gave no jury instructions on either felony murder or the natural and probable consequences doctrine at trial. Based on this agreement, the court denied the petition at the prima facie stage.

## DISCUSSION

The sole issue before us is whether the trial court erred by denying the section 1172.6 petition at the prima facie stage. We independently review an order denying section 1172.6 relief at the prima facie stage. (*People v. Patton* (2023) 89 Cal.App.5th 649, 656.)

A. *Governing Law*

Effective January 1, 2019, Senate Bill No. 1437 significantly limited the scope of California's felony murder rule and eliminated liability for murder under the natural and probable consequences doctrine through two key provisions. (Stats. 2018, ch. 1015, § 1, subd. (f); see *People v. Strong* (2022) 13 Cal.5th 698, 707–708 (*Strong*).) First, Senate Bill No. 1437 amended section 189 so that "[d]efendants who were neither actual killers nor acted with the intent to kill can be held liable for [felony] murder only if

---

[5]     Berry-Vierwinden filed a prior section 1172.6 petition in 2019, before the statute was expanded to cover not only felony murder and the natural and probable consequences doctrine, but also any "other theory under which malice is imputed to a person based solely on that person's participation in a crime." (§ 1172.6, subd. (a).) After the trial court summarily denied his first petition because he was not convicted on either a felony murder or natural and probable consequences theory, we affirmed. (*People v. Berry-Vierwinden* (July 15, 2020, D077327) [nonpub. opn.].)

9

they were 'major participant[s] in the underlying felony and acted with reckless indifference to human life[.]' " (*Strong*, at p. 708, quoting § 189, subd. (e)(3).) Second, it amended section 188 to provide that, when the felony-murder rule does not apply, a principal in the crime of murder can only be convicted where he or she acted "with malice aforethought," and "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3); see *Gentile, supra,* 10 Cal.5th at pp. 842–843.)

Senate Bill No. 1437 also established a new procedure to allow defendants who could not have been convicted under current law to petition the sentencing court to vacate their murder conviction and resentence them on any remaining counts. (See § 1172.6, subd. (a); *Strong*, *supra*, 13 Cal.5th at p. 708.) The process begins with the filing of a petition containing a declaration that all requirements for eligibility are met. (See § 1172.6, subd. (b)(1); *Strong*, at p. 708.) If the defendant's petition is facially valid, the trial court is permitted to examine the record of conviction after appointing counsel to assess whether it refutes the petitioner's claim of eligibility. (*People v. Lewis* (2021) 11 Cal.5th 952, 970–972 (*Lewis*).) Under section 1172.6, subdivision (c), the court may deny the petition at the prima facie stage if the record of conviction discloses that the petitioner is ineligible for relief as a matter of law. (*Lewis*, at pp. 960, 971.) Otherwise, the court must issue an order to show cause and hold an evidentiary hearing under section 1172.6, subdivision (d) to determine whether to vacate the murder conviction, recall the sentence, and resentence the petitioner on any remaining counts. (*Id.* at p. 960.)

One of the requirements for the prima facie showing is that the petitioner "could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189" made by Senate Bill No. 1437. (§ 1172.6, subd. (a)(3).)  Accordingly, a court may deny the petition at the prima facie stage if the record of conviction conclusively establishes that the petitioner was convicted on a theory not affected by Senate Bill No. 1437. (See, e.g., *People v. Williams* (2022) 86 Cal.App.5th 1244, 1257–1258; *People v. Harden* (2022) 81 Cal.App.5th 45, 47–48, 59–60.)

Effective January 1, 2022, Senate Bill No. 775 (2020–2021 Reg. Sess.) (Senate Bill No. 775) amended section 1172.6.  As relevant here, the amendment expanded eligibility for resentencing to include not only those convicted of felony murder or murder under the natural and probable consequences doctrine, but also those convicted of murder under any "other theory under which malice is imputed to a person based solely on that person's participation in a crime."  (§ 1172.6, subd. (a).)

Senate Bill No. 775 further clarified the governing procedures for the prima facie hearing under section 1172.6, subdivision (c) and the evidentiary hearing under subdivision (d).  For a petition satisfying the basic pleading requirements, the court must appoint counsel, permit briefing, and conduct an initial hearing under subdivision (c) to determine whether the petitioner has made a prima facie case for relief, and if so, issue an order to show cause. (§ 1172.6, subds. (b)(3), (c).)  After issuance of an order to show cause, the court must conduct an evidentiary hearing under subdivision (d) to determine whether the petitioner is entitled to relief.  At the evidentiary hearing, the burden is "on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder" under California law as amended by Senate Bill No. 1437.  (§ 1172.6, subd. (d).)

11

B. *The Record Establishes as a Matter of Law that Berry-Vierwinden is Ineligible for Relief*

The trial court denied Berry-Vierwinden's petition at the prima facie stage. In his petition, Berry-Vierwinden conceded he was "not tried under felony murder or the natural and probable consequences doctrine." However, Berry-Vierwinden argues that he is eligible for relief because the instructions given at trial permitted the jury to convict him of first degree murder by imputing malice to him "based solely on [his] participation in a crime." (§ 1172.6, subd. (a).) In support, Berry-Vierwinden relies on the First District's decision in *Maldonado*. Based on our subsequent decisions in *Burns* and *Flores*, we conclude that Berry-Vierwinden is ineligible for relief as a matter of law under section 1172.6, subdivision (a)(3).

In *Maldonado*, as in this case, the defendant was convicted of first degree murder by means of lying in wait. After the trial court denied his petition for relief under section 1172.6 at the prima facie stage, the Court of Appeal reversed. Based on the standard CALCRIM instructions given at trial on aiding and abetting (CALCRIM No. 401), implied malice (CALCRIM No. 520), and lying-in-wait murder (CALCRIM No. 521), the court concluded that the jury instructions were ambiguous and permitted a conviction of murder based on a theory of imputed malice. (*Maldonado, supra,* 87 Cal.App.5th at pp. 1264–1267.) Although the court acknowledged that "the jury was not *required* to construe the instructions in this manner," it concluded that Maldonado was eligible for relief because the jury could reasonably have done so. (*Id.* at pp. 1266–1267.)

*Maldonado* relied on the prior decisions in *People v. Powell* (2021) 63 Cal.App.5th 689 (*Powell*) and *People v. Langi* (2022) 73 Cal.App.5th 972 (*Langi*). In *Powell*, a direct appeal, the court ruled that CALCRIM No. 401

on direct aiding and abetting liability was "not tailored" for aiding and abetting a second degree implied malice murder, because it did not make clear that the aider and abettor must "intend the commission of the perpetrator's *act*, the natural and probable consequences of which are dangerous to human life, intentionally aid in the commission of that *act* and do so with conscious disregard for human life." (*Powell*, at p. 714.) In *Langi*, the court extended this holding to a section 1172.6 proceeding and concluded that the instructional error identified in *Powell* permitted the jury to convict the defendant of aiding and abetting a second degree murder on a theory of imputed malice, making him eligible for relief under the statute as amended by Senate Bill No. 775. (*Langi*, at pp. 978–984.) *Maldonado* in turn found that, because first degree murder by lying in wait may also be based on implied malice, the reasoning of *Langi* similarly applied to a conviction of aiding and abetting first degree murder by lying in wait under CALCRIM Nos. 401, 520, and 521. (*Maldonado*, *supra*, 87 Cal.App.5th at p. 1266.)

Berry-Vierwinden argues that *Maldonado* applies here because the trial court gave the same combination of jury instructions on aiding and abetting a lying-in-wait murder. He asserts that, as in *Maldonado*, these instructions permitted the jury to convict him of aiding and abetting a lying-in-wait murder by imputing malice to him based solely on his participation in a crime. He further argues that this error was exacerbated by the alleged instructional errors he previously raised on direct appeal: (1) the court's modifications of CALCRIM Nos. 520 and 521 to cover aiding and abetting liability; (2) the "equally guilty" language of CALCRIM No. 400; and (3) the last sentence of CALCRIM No. 400.

13

After the court's decision in *Maldonado*, we issued our decision in *Burns*.[6] In *Burns*, a section 1172.6 petitioner convicted of murder argued that he was entitled to relief because the "equally guilty" language of former CALCRIM No. 400 given at his trial allegedly allowed the jury to convict him as an aider and abettor on a theory of imputed malice. (*Burns, supra*, 95 Cal.App.5th at pp. 865–866.) We found that even if Burns was correct about the flaw in this instruction, he was still not eligible for relief because "the alleged error he identifies has nothing to do with the 2018 and 2021 legislative changes that gave rise to section 1172.6's petition process." (*Id.* at p. 865.) We based our decision on subdivision (a)(3) of the statute, which requires the petitioner to establish that he " 'could not presently be convicted of murder or attempted murder *because of changes to Section 188 or 189 made effective January 1, 2019.*' " (*Burns*, at p. 867 [quoting § 1172.6, subd. (a)(3)].) We concluded that the statute "was designed to permit the resentencing of defendants who were properly convicted under the law that applied at the time, but 'could no longer be convicted of murder' because of recent legislative changes." (*Ibid.*) "A [section 1172.6] petition thus supplements a defendant's traditional direct appeal by providing an opportunity to make arguments that did not exist at the time of the appeal, but have arisen since 2019 as a result of recent statutory amendments." (*Ibid.*)

We further concluded that the instructional error identified by Burns had "nothing to do with the legislative changes to California's murder law effected by Senate Bill No. 1437 . . . and Senate Bill No. 775." (*Burns, supra*, 95 Cal.App.5th at p. 867.) In fact, the case law Burns relied on to challenge

---

6    We requested and received supplemental briefing from the parties on the effect of our decision in *Burns*.

14

CALCRIM No. 400 "was decided well before the jury verdict in his trial." (*Burns*, at p. 867.) "The problem with the 'equally guilty' language in former CALCRIM No. 400 was not that it permitted the jury to rely on a *now*-invalid theory of criminal liability, but that it may have misled the jury as to what was *then* required to convict Burns." (*Id*. at p. 868.) This "created a potential issue of instructional error, but it did not operate to offer the jury a theory of legal liability that can no longer support a conviction for murder as a result of the recent statutory changes." (*Id*. at pp. 868–869.) Burns "had every basis and opportunity to raise that issue on his direct appeal." (*Id*. at p. 869.)

In a footnote, we also addressed Burns's reliance on *Maldonado* and *Langi*. We distinguished those cases on two grounds. First, in both cases, "the defendant's trial and direct appeal took place *before* there was any suggestion in the case law that there was a problem with the applicable jury instructions." (*Burns*, *supra*, 95 Cal.App.5th at p. 868, fn. 7.) Second, there was no "indication the opinions considered the effect of the language in subdivision (a)(3) of section 1172.6 requiring that defendant show they can no longer be convicted 'because of' the recent legislative changes." (*Ibid*.)

In a separate footnote, we also distinguished the section 1172.6 holding of *People v. Lee* (2023) 95 Cal.App.5th 1164, which involved a prior conviction of murder under the provocative act doctrine. We noted that in *Lee*, "the law in effect at the time of the defendant's conviction in 1994 'did not require the jury to find that [he] personally acted with malice' " and "it was not until a Supreme Court decision 15 years later that the law was clarified. . . . Thus, the defendant had no reasonable opportunity on direct appeal to raise any claim of error." (*Burns*, *supra*, 95 Cal.App.5th at p. 868, fn. 8.)

We later applied the holding of *Burns* in *Flores*. In *Flores*, the petitioner argued that the jury instructions given at his 2010 trial allowed

15

the jury to convict him of provocative act murder based on a theory of imputed malice, namely, that he aided and abetted his accomplice's provocative act without himself acting with malice. (*Flores*, *supra*, 96 Cal.App.5th at p. 1170.) We concluded that when Flores was convicted in 2010, the law already required that an aider and abettor of a provocative act murder must personally harbor malice. (*Id*. at pp. 1173–1174 & fn. 4.) Flores's claim that he could have been convicted on a theory of imputed malice was therefore "a routine claim of instructional error" that "could have been asserted on appeal from the judgment of conviction." (*Id*. at p. 1173.) Relying on *Burns*, we concluded that Flores therefore failed to satisfy the prima facie requirement that he "could not presently be convicted of murder or attempted murder *because of changes to Section 188 or 189 made effective January 1, 2019.*" (§ 1172.6, subd. (a)(3), italics added.)

Notwithstanding *Maldonado*, we conclude that the holdings of *Burns* and *Flores* apply here. To establish a prima facie case for relief, Berry-Vierwinden was required to demonstrate that he could not presently be convicted of murder "because of" the "changes" made by Senate Bill No. 1437. (§ 1172.6, subd. (a)(3).) "The 'changes' described in section 1172.6, subdivision (a)(3) plainly refer to the substantive amendments to sections 188 and 189 that were enacted along with the resentencing provisions in Senate Bill 1437." (*People v. Curiel* (Nov. 17, 2023) ___ Cal.5th ___, 2023 Cal. LEXIS 6622, at *48; see also *Strong*, *supra*, 13 Cal.5th at p. 712 [construing "because of changes" language of subdivision (a)(3) to require "that the 2019 changes supply a basis for the claim"].)

As in *Burns* and *Flores*, the instructional errors Berry-Vierwinden asserts have nothing to do with these 2019 legislative changes. What he is really arguing is that the instructions "may have misled the jury as to what

16

was *then* required to convict [him]." (*Burns*, *supra*, 95 Cal.App.5th at p. 868.) By the time of his trial in 2010, California law was already clear that a direct aider and abettor could not be convicted of lying-in-wait murder on an imputed malice theory. Specifically, the Supreme Court had ruled that: (1) the perpetrator of a first degree murder by means of lying in wait must act with malice aforethought (*People v. Dillon* (1983) 34 Cal.3d 441, 465; *People v. Mattison* (1971) 4 Cal.3d 177, 182); and (2) a direct aider and abettor of murder must at a minimum "know and share the murderous intent of the actual perpetrator." (*People v. McCoy* (2001) 25 Cal.4th 1111, 1118 (*McCoy*); see also *ibid.* ["outside of the natural and probable consequences doctrine, an aider and abettor's mental state must be at least that required of the direct perpetrator"]; *Gentile*, *supra*, 10 Cal.5th at pp. 844–845 [citing *McCoy* for the principle that "when a person directly aids and abets a murder, the aider and abettor must possess malice aforethought"]).

As we noted in *Flores*, the Supreme Court's 2001 decision in *McCoy* made "clear . . . that 'when guilt does not depend on the natural and probable consequences doctrine, . . . the aider and abettor must know and share the murderous intent of the actual perpetrator.' " (*Flores*, *supra*, 96 Cal.App.5th at p. 1173 & fn. 4 [quoting *McCoy*, *supra*, 25 Cal.4th at p. 1118]; see also *Burns*, *supra*, 95 Cal.App.5th at p. 868 ["The Supreme Court's *McCoy* decision . . . made clear that the direct perpetrator's mental state could *not* be imputed to an aider and abettor, whose mental state had to be independently evaluated."].) After the Supreme Court's 2001 decision in *McCoy*, it was unmistakable that a direct aider and abettor's "mental state is her own; she is liable for her mens rea, not the other person's." (*McCoy*, *supra*, 25 Cal.4th at p. 1118.)

By arguing that the jury instructions allowed the jury to convict him as a direct aider and abettor of murder on an imputed malice theory, Berry-Vierwinden is necessarily asserting that they were erroneous under the law in effect at the time of his 2010 trial and subsequent direct appeal. Under *Burns* and *Flores*, however, a section 1172.6 petitioner cannot establish a prima facie case for relief by asserting that the jury instructions permitted conviction on a theory of imputed malice that was *already* prohibited even *before* the enactment of Senate Bill No. 1437. This amounts to "a routine claim of instructional error" that "could have been raised on appeal from the judgment of conviction." (*Flores*, *supra*, 96 Cal.App.5th at p. 1173.) "Section 1172.6 does not create a right to a second appeal, and [Berry-Vierwinden] cannot use it to resurrect a claim that should have been raised in his [direct] appeal." (*Burns*, *supra*, 95 Cal.App.5th at p. 865; see also *People v. Farfan* (2021) 71 Cal.App.5th 942, 947 [section 1172.6 "does not afford the petitioner a new opportunity to raise claims of trial error"].)

To the extent *Maldonado* and *Langi* can be read to suggest that such an instructional error may be asserted as a basis for section 1172.6 relief— even if the alleged error could have been raised on direct appeal under then-existing law not changed by Senate Bill No. 1437—we disagree for two reasons. First, such a result would be inconsistent with our decisions in *Burns* and *Flores*. Second, as we noted in those cases, the courts in *Maldonado* and *Langi* did not consider the language of section 1172.6, subdivision (a)(3) requiring that defendants show they can no longer be

18

convicted of murder "because of changes" made by Senate Bill No. 1437.[7] (*Burns*, *supra*, 95 Cal.App.5th at p. 868, fn. 7; *Flores*, *supra*, 96 Cal.App.5th at p. 1174.)

In sum, Senate Bill No. 1437 did not *change* the law to prohibit direct aider and abettor liability on an imputed malice theory—this was already settled California law by the time of Berry-Vierwinden's 2010 trial. Under *Burns* and *Flores*, Berry-Vierwinden cannot establish that he "could not presently be convicted of murder or attempted murder *because of changes* to Section 188 or 189" made by Senate Bill No. 1437. (§ 1172.6, subd. (a)(3), italics added; see also *People v. Antonelli* (2023) 93 Cal.App.5th 712, 720–721, review granted Oct. 18, 2023 (S281599) [irrespective of any instructional error in allowing the jury to convict petitioner of provocative act murder on an imputed malice theory, petitioner was ineligible for relief under section 1172.6, subdivision (a)(3) because the law in effect before Senate Bill No. 1437 already required that the defendant personally harbor malice for a provocative act murder and Senate Bill No. 1437 "did not change the law" on the issue].) The trial court correctly denied the petition because Berry-Vierwinden "did not satisfy the section 1172.6, subdivision (a)(3) condition as part of his required prima facie showing." (*Burns*, *supra*, 95 Cal.App.5th at p. 867.)

---

[7] In its background discussion of the applicable law, *Maldonado* quoted from a Supreme Court case quoting section 1172.6, subdivision (a)(3) (*People v. Strong* (2022) 13 Cal.5th 698, 708), but *Maldonado* did not discuss or refer to this subdivision in its subsequent legal analysis. (*Maldonado*, *supra*, 87 Cal.App.5th at pp. 1260–1267.) Likewise, *Langi* indirectly referred to subdivision (a)(3) only in quoting part of the petitioner's section 1172.6 petition alleging that he " 'could not be convicted of . . . 2nd degree murder because of changes made' by Senate Bill No. 1437." (*Langi*, *supra*, 73 Cal.App.5th at p. 977.)

## DISPOSITION

The order denying the petition is affirmed.

                                                    BUCHANAN, J.

WE CONCUR:


McCONNELL, P. J.


KELETY, J.